UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CAROL KOHN, Mother and legal guardian | : |
| of SGT, Minor and ESTATE OF SGT, | : |
| | : |
|     Plaintiffs, | : |
| | : |
| v. | : CASE NO.: 2:21-CV-108 |
| | : |
| CAMDEN COUNTY SCHOOL DISTRICT, | : |
| DANIEL BURNS, Official and Individual Capacity | : |
| and GAIL DUGGER, Official and Individual | : |
| Capacity and KATHRYN JACKSON, Official and | : |
| Individual Capacity | : |
| | : |
| | : |
|     Defendants. | : |

**AMENDED COMPLAINT**

COMES NOW, Plaintiff CAROL KOHN, as Mother and legal guardian of SGT and on behalf of the Estate of SGT, in the above captioned action, by and through their undersigned counsel of record, and files this Amended Complaint and request for damages and respectfully shows the Court the following:

**JURISDICTION AND VENUE**

1.

Plaintiff a resident of Ashburn, Loudoun County, Virginia and submits herself to the jurisdiction and venue of this Court.

2.

Defendant Camden County School District (hereinafter referred by Defendant CCSD) is, and at all times herein mentioned, a public school district of Kingsland, Camden County, Georgia,

and may be served through its Superintendent, Dr. John Tucker, Ed.D., at Central Administrative Office, 311 South East Street, Kingsland, Georgia 31548.

3.

Defendant Daniel Burns is, and at all times herein mentioned, a resident of St. Marys, Camden County, Georgia, who may be served at his last known address, 118 Natchez Court, St. Marys, Georgia 31558

4.

Defendant Gail Dugger is, and at all times herein mentioned, a resident of Woodbine, Camden County, Georgia, who may be served at her last known address, 441 Crooked River Drive, Woodbine, Georgia 31569.

5.

Defendant Kathryn Jackson is, and at all times herein mentioned, a resident of Woodbine, Camden County, Georgia.

6.

Plaintiff believes and alleges that, at all times herein mentioned, each of the individual defendants sued herein was the agent and employee of each of the Defendant Camden County School District and was at all times acting within the purpose and scope of such agency and employment.

7.

This action is based upon the tortious acts and/or omissions committed by Defendants within the confines of Camden County, Georgia.

8.

This Complaint is brought under Americans with Disabilities Act 42 U.S.C. § 12132 ("ADA").

9.

By virtue of the facts contained herein, this Court has jurisdiction and venue of the parties.

## INTRODUCTION

10.

Plaintiff is the mother and legal guardian and a surviving heir at law of SGT.

11.

In 2019, SGT was a fourteen-year-old boy with a learning disability.

12.

SGT attended school in Camden County, under the purview and control of the Camden County School District.

13.

SGT was bullied at school because of his disability, and SGT's mother put CCSD and the Individual Defendants on notice of the bullying.

14.

CCSD and the Individual Defendant either ignored SGT's mother or failed to act fast enough.

15.

On or about November 19, 2019, SGT took his own life as a result, at least in part, of CCSD's violations under the ADA, negligent acts and omissions on the part of CCSD and its

employees, as well as standard of care violations committed by CCSD teachers during the 2019 school year.

## FACTUAL ALLEGATIONS

### A.  History of SGT's Disability and The Beginning of The Bullying

16.

Beginning in 2018, Carol sent SGT to a psychiatrist, where he was diagnosed with attention deficit hyperactivity disorder ("ADHD").

17.

During that mental health treatment, in January of 2018, SGT stated that, "he gets tricked by other kids" to get in trouble.  Elaborating through tears, SGT identified one kid at school who "retaliated" against him.

18.

Later, his stepfather indicated to SGT's mental health professional that he was concerned about bullying at school.

19.

Plaintiff notified defendants of the issues related to the bullying that was occurring to SGT on school premises.

### B. The Continued Bullying and Defendants Failure to Protect SGT

20.

In October 2018, SGT first threatened suicide during school to a Camden County teacher.

21.

The head counselor, Daniel Burns, contacted Plaintiff and a conference was held.

22.

Nothing in SGT's school file reflects this incident, nor even that SGT may have had suicidal tendencies.

23.

The next school year, CCSD's culture of bullying became even more apparent to Plaintiff. BGT, SGT's brother, was physically beaten by another bully while at school, in gym class.

24.

The injuries BGT sustained required immediate surgery to his hand. Given that both of Plaintiff's sons were experiencing bullying while at school, Plaintiff rightfully feared that bullying may be an endemic problem in CCSD.

25.

Defendant CCSD failed to even create an incident report or maintain surveillance video footage of the bullying.

26.

Throughout the 2018 school year and first semester of 2019, the bullying of SGT continued.

27.

In October 2019, Plaintiff found SGT crying in his room.

28.

SGT confided to Plaintiff that kids in his gym class were constantly throwing balls at him and trying to hit him in the head.

29.

In the hallway, kids kicked the back of his knees, causing him to fall to the floor, and kids called him names, inferring that he was homosexual and that he was dumb because of his ADHD.

30.

One bully encouraged him to "kill yourself", and another constantly harassed SGT regarding his Hispanic accent.

31.

On Monday, October 28, 2019, Plaintiff called the school to set a meeting with Defendant Burns, requesting the school investigate the incidents, set a parent-teacher conference and remove SGT from gym class.

32.

There is no documentary evidence that CCSD did anything in response to Plaintiff's requests until a week later and a parent-teacher conference was held at the school.

33.

During the November 6th parent-teacher conference, Plaintiff again requested that CCSD investigate the incidents of bullying because she believed the bullying was ongoing.

34.

She also requested CCSD refer SGT into a 504-plan due to his ADHD.

35.

There is no evidence that the CCSD implemented any 504 accommodations for SGT.

36.

Two days after the parent-teacher conference, Defendant Dugger punished SGT to ten (10) days of lunch detention for the trivial offense of standing on a yellow pavement curb.

37.

This punishment was administered without notification to Plaintiff.

38.

In weeks prior to this, Defendant Dugger pressured Plaintiff to complete the "Federal Impact Form" and because of the bullying Plaintiff refused.

39.

Plaintiff's refusal incensed Defendant Dugger, going so far as to pull SGT out of class and threatening him with punishment if Plaintiff did not complete the form.

40.

Defendant Dugger threatened Plaintiff directly, saying she would be calling Plaintiff's work supervisors.

41.

None of Defendant Dugger's efforts worked; instead Defendant Dugger exerted a level of control over SGT by isolating him from his friends during one of the few social opportunities of the day and brought even more attention to him from the bullies.

42.

On November 18, 2019, SGT's math teacher, who was present in the November 6 parent-teacher conference, falsely accused him of disrupting the substitute teacher from a day earlier.

43.

Embarrassed, SGT put his head on his desk, and the math teacher threw him out of class, sending him to in-school detention.

## C. <u>SGT's Suicide</u>

44.

That afternoon SGT committed suicide.

45.

SGT went home after school with his younger brother BGT.

46.

SGT was visibly upset to his younger brother; he was concerned about the bullying at school and about the treatment he was receiving from his teachers and school administrators.

47.

After SGT and BGT got home, SGT hung himself from the second-floor balcony of his family home.



48.

BGT, his brother, witnessed the whole thing and tried desperately to stop him. They physically struggled. But SGT was stronger. Terrified, BGT called his mother. They immediately called for emergency medical care and called the next-door neighbor, Leigh Ann Davis, who was

a former nurse. The neighbor resuscitated SGT until the first responders arrived, who transported

SGT to the local hospital in Camden County and later transported SGT to the trauma hospital in

Jacksonville, Florida.

49.

SGT could not be saved.

50.

SGT passed away the next morning.

51.

In a suicide note, SGT named bullying and pressure at school as one of the motivations for

losing the desire to live.

55.

In a suicide video to his mother, SGT spoke almost exclusively of the bullying.

**D. CCSD'S Unassessed Cultural of Bullying**

52.

Any cursory review of local news and social media indicates that there are deep cultural

problems with bullying in the Camden County School District.

53.

The same week that SGT committed suicide, another CCSD student attempted suicide by

overdose at school.

54.

Following SGT's suicide many other CCSD parents took to social media and expressed

their concerns regarding the unaddressed culture bullying within the school system:

- "Where are the teachers in between classes"

- "Somebody has to protect these children"
- "My child is bullied, a lot."
- "I had to take my daughter out of that school cuz (sic.) of the bullying and threats that kept happening."
- "I fear for our children and wish the school would step it up."
- "We as parents need to go to a school board meeting or the school and start demanding that something be done about the bullying as it's out of control."
- "When you have a teacher calling an entire class idiots…So upsetting, school doesn't seem to care."

55.

Many parents and students in SGT's class felt that CCSD, its administrators, and its teachers ignored this obvious culture of bullying, which was and is pervasive through the school system.

56.

Despite this obvious culture of bullying, the CCSD and individual Defendants have not addressed the problem and have attempted no institutional solutions – before or after SGT's death.

## CAUSES OF ACTIONS

### A. ADA Violations Against CCSD and All the Individual Defendants

57.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

58.

A five-part test is employed to determine whether a school has liability for bullying under the ADA:  (1) the plaintiff is an individual with a disability or a member of a protected class, (2) he or she was harassed based on that disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education and created an abusive educational environment, (4) the defendant knew about the harassment, and (5) the defendant was deliberately indifferent to the harassment.

59.

An application of these five elements demonstrates that the CCSD will ultimately be found liable for SGT's suicide.

60.

SGT suffered from a disability in the form of ADHD.

61.

Despite Plaintiff's urgent request, Defendants did not refer SGT to a 504-accommodation plan for his disability.

62.

Further, SGT is of Hispanic background and was bullied as a result of his ethnicity.

63.

SGT was harassed based on that disability, both by teachers and other students.

64.

SGT was harassed based on his ethnicity and accent.

65.

SGT was further bullied by the bullies' perception of SGT's sexual preference.

66.

The harassment and bullying was severe and pervasive.

67.

Plaintiff complained to multiple officials at CCSD including Individual Defendants, on multiple occasions over the course of months, putting them on notice of the bullying SGT endured.

68.

CCSD and Individual Defendants were deliberately indifferent to the bullying to SGT, as they were aware he had suicidal tendencies.

69.

CCSD and Individual Defendants failed to investigate the bullying that was occurring to SGT.

70.

CCSD personnel failed to properly train and supervise its employees and personnel.

71.

CCSD failed to follow its own protocols regarding bullying and failed to comply with the Americans with Disabilities Act.

72.

Defendants' conduct was intentional, malicious and done for the purpose of causing SGT to suffer humiliation, mental anguish and emotional and physical distress.

73.

If the teachers and administrators of the Camden County School District had followed their own policies and the requirements of ADA, and had simply been attentive to a struggling student, SGT could have been saved.

B.  **Negligence Against the Individual Defendants (in their individual capacities)**

74.

Plaintiff re-alleges each and every aforementioned paragraph as if fully restated herein.

75.

The Individual Defendants owed a duty of care to protect SGT while he was under their care.

76.

When the Individual Defendants failed to investigate the reported instances of bullying that was occurring against SGT, a student with known suicidal tendencies, they breached that duty of care to Plaintiff.

77.

When, after SGT's mother's request, the Individual Defendants failed to promptly enter SGT into a 504-accomodation plan, a student with known ADHD and suicidal tendencies, they breached that duty of care to Plaintiff.

78.

When the Individual Defendants publicly punished and isolated SGT, a student with known suicidal tendencies, they breached that duty of care to Plaintiff.

79.

Because of the Individual Defendants' foregoing breaches of their respective duties of care, at least in part, SGT committed suicide.

80.

Because of the Individual Defendants foregoing breaches of their respective duties of care, Plaintiff has suffered damaged, as pled *supra*.

## DAMAGES

### A. Special Damages

81.

Carol immediately called for emergency medical assistance upon the discovery of SGT's suicide attempt.

82.

Plaintiff suffered great expense in attempting to save SGT's life, but medical professionals were not able to save him.

83.

As a result of Defendants negligence and violations of the ADA, SGT's Estate incurred medical expenses totaling one hundred and forty-five thousand nine hundred and eighty-five dollars and eighteen cents ($145,985.18).

84.

As a result of Defendants negligence and violations of the ADA, SGT's Estate incurred funeral expenses of five thousand five hundred and eighty dollars and ninety cents ($5,580.90).

### B. Lost Wages

85.

SGT was fourteen years old when he died.

86.

According to the Actuarial Life Table provided by the Social Security Administration, SGT should have lived sixty-three (63) more years.

87.

As a result of Defendants negligence and violations of the ADA, Defendants are liable to Plaintiff for sixty-three (63) years of lost wages, in an amount to be proven at trial.

**C. Pain and Suffering**

88.

SGT lived for approximately eighteen (18) hours following the suicide attempt.

89.

During the suicide attempt and the following eighteen (18) hours SGT endured severe pain and suffering as a result of Defendants negligence and violations of the ADA.

WHEREFORE, Plaintiff prays:

a)    For general damages, including pain and suffering;

b)    For all special damages, including medical and incidental expenses, funeral expenses, and other consequential damages according to proof;

c)    For lost wages;

d)    For costs of suit herein incurred;

e)    For such other and further relief as the court may deem proper;

f)    That Plaintiff have a trial by jury as to all issues so triable.

The 16th day of December, 2021.

 /s/ *M. Waite Thomas*
Joseph R. Odachowski, Esq.
Georgia State Bar No. 549470
M. Waite Thomas, Esq.
Georgia State Bar No. 617667
Attorneys for Plaintiffs

TAYLOR ODACHOWSKI SCHMIDT
& CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia 31522
Telephone:      (912) 634-0955
Facsimile:      (912) 638-9739
jodachowski@tosclaw.com
wthomas@tosclaw.com