UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CAROL KOHN, Mother and legal guardian of SGT, Minor and ESTATE OF SGT, | : : : |
| Plaintiffs, | : : |
| v. | : CASE NO.: 2:21-CV-108 : |
| CAMDEN COUNTY SCHOOL DISTRICT, DANIEL BURNS, Official and Individual Capacity and GAIL DUGGER, Official and Individual Capacity and KATHRYN JACKSON, Official and Individual Capacity, | : : : : : : : |
| Defendants. | : |

### SUPPLEMENTAL BRIEF IN SUPPORT OF
### PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

COMES NOW the Plaintiffs, CAROL KOHN and the ESTATE OF SGT, in the above-captioned action, by and through their undersigned counsel of record, and file this Supplemental Brief in support of their Motion for Spoliation Sanctions, respectfully showing the Court as follows:

This Court granted in part Plaintiffs' Motion for Sanctions, concluding that Plaintiffs are entitled to sanctions concerning Defendants' spoliation of SGT's ESOL records and Defendant Dugger's call logbook. The court's order further permits Plaintiffs to renew their requests for sanctions later for certain other categories of evidence. This jurisdiction recognizes that magistrate judge's authority to enter sanctions for spoliation. Danny Lynn Elec. V. Veolia Es Solid Waste, 2012 U.S. Dist. LEXIS 31684, 2012 WL 786843.

This supplemental brief shall address only the nature of the sanctions requested related to SGT's ESOL records and Defendant Dugger's call logbook. Determining the "appropriate

sanction for spoilation…is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 2003 U.S. Dist. Lexis 18771, 92 Fair Empl. Prac. Cas. (BNA) 1539. This authority "arises jointly under the Federal Rules of Civil Procedure and the court's own inherent powers." Id., citing Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991) (Francis, M.J.) citing Fed. R. Civ. P. 37). See also Shepherd v. American Broadcasting Companies, 314 U.S. App. D.C. 137, 62 F.3d 1469, 1474 (D.C. Cir. 1995)("When rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap."). This case cries out for an adverse inference and Plaintiffs hereby renew their request for an adverse inference and ask the Court to reconsider that portion of the Court's prior order. Other courts have provided more severe sanctions for lesser bad conduct of the spoliator.

      This Court should not ignore that Defendants' duty to preserve evidence was triggered both because of Defendants had a statutory and administrative duty to maintain the records (see Hicks v. Gates Rubber Co., 833 F.2d 1406, 1419 (10th Cir. 1987)(Bad faith destruction may be shown where a defendant "has selectively retained certain self-servicing documents and discarded the remainder in a particular time period.")) and Defendants' duty to preserve evidence arose when Defendants had notice or should have known the evidence may be relevant to potential future litigation. See Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo. 2007)(citing Zubulake v. UBS Warburg, LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). While this Court has already ruled that Defendants had a duty to preserve the evidence, it is worth considering the severity of the impact of the missing evidence.

      Who in their right mind would delete or lose the entire set of SGT's ESOL records (documents which would have provided a treasure trove of information about SGT during the

months leading up to his death) or the entire call logbook (documents that showed the activity or inactivity of someone who was responsible for SGT, *in loco parentis*) of a person intimately involved in the Defendants' role in loco parentis to SGT? The answer is nobody. This case involves the suicide of SGT, a minor, who spent a substantial portion of his life under the care and supervision of Defendants. Any reasonable person would have placed a "litigation hold" on all such documents and evidence to ensure the preservation of relevant documents. See e.g., Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Further, any reasonable person would have preserved the evidence to assist SGT's parents to better understand all circumstances leading up to the fateful day SGT was in such despair that he terminated his young life.

It is no small matter that Defendants have deprived Plaintiffs of information that with little doubt would have provided Plaintiffs with insight into the events and circumstances leading up to SGT's suicide. Bear in mind that this is a case involving a minor whose agency to communicate thoughts and feelings was limited and who spent most of each day under the supervision (*in loco parentis*) of the Defendants. These Defendants had direct knowledge of the events and circumstances leading up to SGT's suicide and also had direct knowledge of the importance of SGT's ESOL records and Defendant Dugger's call logbook. Those very records would no doubt have provided insight for SGT's parents and the trier of fact, to have a more clear understanding of the merits of Plaintiffs' claims, as well as Defendants defenses (including affirmative defenses) that have been advanced in this litigation. Defendants knew of SGT's vulnerability and that any information they had related to Defendant's involvement, again *in loco parentis*, would be relevant.

The Defendants destroyed and failed to preserve critical evidence. The Defendants, the document destroyers, achieved gains by preventing Plaintiffs from having access to and using

documents that would have been particularly damaging. Additionally, Defendants are causing Plaintiffs to endure additional and excessive fees and costs. Curiously, Defendants have retained other documents that they consider important and helpful to their defense, and this court should consider whether the hostile inferences, together with other requested remedies, will appropriately offset the strategic gains enjoyed by the bad faith conduct of Defendants. See Dale A. Oesterie, A Private Litigant's Remedies for an Opponent's Inappropriate Destruction of Relevant Documents, 61 Tex. L. Rev. 1185.

Within the court's inherent power, the Plaintiffs' respectfully request that the Court enter the following sanctions against Defendants, sanctions that the Plaintiffs contend "fit the wrong":

1. Exclusion of evidence, including test results or documents. See New Concept Dental v. Dental Res. Sys., 2020 U.S. Dist. Lexis 108682, 2020 WL 3303077, citing Graff v. Baja Marine Corp., 310 Fed. Appx. 298 (11th Cir. 2009); Bashir v. Amtrak, 119 F.3d 929 (11th Cir. 1997). The Court should preclude Defendants from offering any evidence regarding their reclassification of SGT out of ESOL services or any attempt to monitor SGT after being exited from ESOL services because Defendants failed to preserve any documentation regarding the reclassification and only preserved limited documentation regarding the monitoring. Who is to say what the missing documentation contains? Plaintiffs contend that the missing documentation contains information detrimental to Defendants' defenses, but we can never know because that documentation is gone.

2. Sanction of establishing facts and the existence of documents. Nevada v. Abbott Labs, Inc. (In re Pharm. Indus. Average Wholesale Price Litig.), 2007 U.S. Dist. Lexis 100125. In this case, the Plaintiffs' requested sanction to establish facts is less severe than an adverse inference. Establishing facts that Defendants concede that it had documents, that the

documents existed, and that they no longer exist due to no fault of Plaintiff seeks to establish the existence of documents that Defendants conceded they possessed but that they have not been produced. This Court should also impose the following additional sanctions, establishing as fact for all purposes of this litigation that:

- A Reclassification Form and Monitored Student Review Forms were created by Defendants for SGT, and such forms and reviews would have included comments and information relevant to SGT's exit from ESOL services and later monitoring, but Defendants failed to retain those documents when such documents should have been retained. [DeLoach Depo., p. 43, ll. 11-18, p. 51-53, ll. 21-15, Dkt. 46-7; Monitored Student Review Form, Dkt. 46-10; Reclassification Form, Dkt. 46-9]. Further, that the reclassification form and/or monitored student review forms were never provided to SGT's parents and SGT's parents never had the benefit of receiving this important information prior to SGT's death.

- The Reclassification Form and Monitored Student Review Forms were in the sole possession and custody of Defendants, Plaintiffs requested such documents from Defendants, and Defendants contend that all such records were destroyed or can no longer be located. At all times relevant to such documents, Defendants knew of the potential claim related to SGT's death.

- Defendant Dugger maintained a logbook wherein she kept a record of all phone calls made and received during the day, along with notes about the substance of the calls. Doc. 50-8 at 105. Upon Defendant Dugger's retirement, her phone log and other belongings were boxed up and left with CCSD for storage. Id. The logbook contained information about a disciplinary incident involving SGT a week before his death, for

5

      which Defendant Dugger imposed a week of lunch detention as a punishment. The logbook also contained information about Defendant Dugger's efforts to pressure SGT's parents to fill out a federal aid form. The logbook existed, it contained information related to SGT, and the logbook was either lost or destroyed by Defendants. At the time the logbook was either lost or destroyed, Defendants were aware of SGT's death, and the likelihood of a claim related to his death. The Defendants did not provide a copy of Defendant Dugger's logbook to SGT's parents and SGT's parents were never made aware of the contents of the logbook; however, it is stipulated that Defendant Dugger's logbook contained information that would have been helpful to SGT's parents to better understand the emotional and psychological health of SGT prior to SGT's death.

- o This court should preclude and strike testimony of any such irretrievably destroyed evidence and allow Plaintiff to argue any inferences Plaintiffs may hope the jury will draw. 103 Investors I, L.P. v. Square D Company, 470 F.3d 985, 988-89 (10th Cir. 2006); Montoya v. Newman, 2015 U.S. Dist. Lexis 87836 (D. Colo. July 7, 2015); Ericksen v. Kaplan Higher Educ., LLC, No. 14-CV-3106, 2016 WL 695789 (D. Md., Feb, 2016).

3. Adverse inference in ruling on any motion for summary judgment. This court should reconsider its ruling regarding the adverse inference and take a sound approach in presuming an obligation to preserve files and intentional destruction and consider the Defendants' obligation to preserve files and intentional destruction when ruling on summary judgment. EEOC v. Denver Newspaper Agency, LLP, 2007 U.S. Dist. Lexis 9837 (D. Colo. Feb. 12, 2007)(finding that because missing notes may have contained relevant evidence of the falsity

of the legitimate non-discriminatory reasons an adverse inference could impact the jury, summary judgment motion would be denied on issue.") Plaintiff urges the Court to reexamine what is contained in the destroyed documents. [Ex. A, the Reclassification Form; Ex. B., the Monitored Student Review Form] The information provided in these forms goes beyond just language monitoring. It goes to SGT's general well-being and progress as a student generally. As such, it is relevant to more than just the Equal Educational Opportunity Act claim; it is relevant to all of Plaintiffs' claims. An imagination can run wild considering all the information that could have been contained in these forms which would have alerted the District to SGT's problems and potential bullying, especially considering the notice the District had of SGT's propensity for self-harm.

4. Jury Instruction: Plaintiffs should be allowed to present evidence to the jury regarding the spoliation and to argue any inference they want to draw from the spoliation. See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc., 199 F.Supp. 3d 958, 986 (E.D. Va. 2016); Nuvasive, Inc. v. Madsen Med., Inc. No. 13-CV-2077, 2016 WL 305096 (S.D. Cal. Jan. 26, 2016).

5. Adverse inference with respect to Defendant Dugger and a positive inference on behalf of SGT's parents. Again, Plaintiff urges the Court to reconsider its decision regarding the adverse inference. It would be an appropriate use of the court's discretion to fashion a remedy whereby the jury receive an instruction that Defendants failed to recognize the importance of informing SGT's parents of the substance of calls relating to challenges or concerns relative to SGT. Any information regarding SGT, particularly given the known and verified vulnerable state of SGT, would have been relevant and helpful to SGT's parents. These Defendants may attempt to prove or infer that SGT's parents were not diligent in learning the emotional and psychological stability or instability of SGT; however, the records clearly show that SGT's parents did not

7

have access to all relevant information and/or documents related to SGT from the school system.

6. Exclusion of expert testimony. Defendants' expert should be prevented from testifying concerning defendants meeting their standard of care with respect to the monitoring or reporting SGT's progress relative to the reclassification form and/or monitored review forms.

7. Cost-shifting for certain expert expenses and discovery expenses. See Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 2003 U.S. Dist. Lexis 18771, 92 Fair Empl. Prac. Cas. (BNA) 1539. Plaintiffs request an order authorizing the Plaintiffs to continue to seek additional discovery to depose additional administrative personnel regarding the existing ESOL records or logbooks with respect to other students who were students at the same time of SGT, to determine whether other students' records similarly have been lost or misplaced. The fees and costs associated with such additional discovery should be borne by Defendants.

8. Defendants should be required to pay attorneys' fees and costs of additional depositions. Id. Plaintiffs anticipate the need to take the following additional depositions, related to Defendants' failure to keep and maintain the records set forth in Plaintiffs' spoliation motion: Defendant Daniel Burns, Defendant Gail Dugger, the District's information technology manager, and Sandra DeLoach. Plaintiffs respectfully request an order requiring Defendants to pay and reimburse Plaintiffs for attorneys' fees and costs, at customary and reasonable rates.

9. Defendants should be required to pay Plaintiffs monetary damages of no less than $50,000.00. (The Court in MOSAID Techs. Inv. v. Samsung Elecs. Co., 348 F. Supp. 2d 331 (D.J.J. 2004), awarded sanctions of $566,839.97 where a party "willfully blinded itself,"; and the court in Harkabi v. Sandisk Corp., 275 F.R.D. 414 (S.D.N.Y. 2010) awarded sanctions of $150,000 in monetary sanctions.).

10. Defendants should be required to pay Plaintiffs' reasonable costs and attorney's fees incurred in connection with this motion.  Asher Assocs., LLC v. Baker Hughes Oilfield Operations, Inc., 2009 U.S. Dist. Lexis 40136 (D. Colo. May 12, 2009).   This would ameliorate the economic prejudice imposed on the Plaintiffs and also serve as a deterrent to future spoliation. Further, Plaintiffs will never have the benefit of the use of the subject records at summary judgment or trial, which will cause more effort and time than otherwise necessary to litigate Plaintiffs claims, had the records not been destroyed.  The estimate of such additional fees and costs is no less than $15,000.00.

### Request for Oral Argument

Plaintiffs hereby request oral argument on this motion and supplemental brief.

### CONCLUSION

Having met their burden, Plaintiffs reiterate their request that the Court impose sanctions on the CCSD for its failure to preserve the missing evidence as described herein and in Plaintiffs' initial briefing. Plaintiffs also welcome oral arguments regarding these issues to the extent the Court has additional questions.

Respectfully submitted, the  2nd   day of May, 2024.

    /s/ *Joseph R. Odachowski*
JOSEPH R. ODACHOWSKI
Georgia State Bar No:	549470
M. WAITE THOMAS
Georgia State Bar No:	617667
*Attorneys for Plaintiffs*

TAYLOR, ODACHOWSKI, SCHMIDT
  &amp; CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia 31522
Telephone:	(912) 634-0955
Facsimile:	(912) 638-9739
Email:	jodachowski@tosclaw.com
        wthomas@tosclaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties in the foregoing matter with a copy of the ***Plaintiffs' Supplemental Brief in Support of Their Motion for Sanctions*** through the Clerk of Court, using the CM/ECF system, which will automatically send email notification of such filing to the attorney(s) of record.

This  2nd  day of   May  , 2024.

                                                      /s/ *Joseph R. Odachowski*
                                                   JOSEPH R. ODACHOWSKI
                                                   Georgia State Bar No:         549470
                                                   M. WAITE THOMAS
                                                   Georgia State Bar No:         617667
                                                   *Attorneys for Plaintiffs*

TAYLOR, ODACHOWSKI, SCHMIDT
     & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia 31522
Telephone:     (912) 634-0955
Facsimile:       (912) 638-9739
Email:              jodachowski@tosclaw.com
                    wthomas@tosclaw.com