UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CAROL KOHN, Mother and legal guardian of SGT, Minor and ESTATE OF SGT <br><br> Plaintiffs, <br><br> v. <br><br> CAMDEN COUNTY SCHOOL DISTRICT, DANIEL BURNS, Official and Individual Capacity and GAIL DUGGER, Official and Individual Capacity and KATHRYN JACKSON, Official and Individual Capacity <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 2:21-CV-00108-LGW-BWC |

**DEFENDANTS' RESPONSE TO SUPPLEMENT BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS**

Despite this Court's Order finding that sanctions "do not rise to the level of drawing an adverse inference," [Doc #107 at p.1], the overwhelming majority of sanctions sought by Plaintiffs in their supplemental brief either expressly ask for an adverse inference or have the same practical effect as an adverse inference through another nomenclature. Generally speaking, Plaintiffs' proposals do not seek sanctions that would be lesser than an adverse inference, but largely seek sanctions that may foreclose summary judgment for Defendants or otherwise establish liability of Defendants, despite the extensive record that has otherwise been developed thus far in this litigation.

1

Plaintiffs set out ten numbered proposals for potential sanctions. Defendants respond to each proposal using the same numbers in the Supplemental Brief in Support of Plaintiffs' Motion for Spoliation Sanctions:

1.  Plaintiffs ask the Court to preclude the introduction of evidence regarding SGT's reclassification out of ESOL services or any attempt to monitor SGT after being exited from ESOL services. Such a sanction goes beyond an adverse inference, as it essentially seeks to establish facts that even the Plaintiff does not contend occurred. It also fails to "fit the wrong" in any meaningful way. Plaintiffs overlook the fact that Defendants did produce documents regarding SGT's reclassification and the reasons for that reclassification [Doc #50-13; 80-5 p.5, 7]. Defendants also produced documents relating to his monitored status, including a conference report from the end of SGT's first year in monitored status [Doc# 80-11 p.44]. What is at issue are monitoring forms that should have been completed by teachers at the start of SGT's first year of monitored status in August 2018 [Doc #46-10]. Plaintiffs also contend that a specific form from the State Department of Education for reclassifying SGT at the end of the 2017-2018 school year should have been completed in addition to the reclassification form completed locally and produced to Plaintiffs [Doc #50-13; 80-5 p.5, 7]. If those documents ever existed, they were not located or produced by Defendants.

    It is entirely unclear how precluding evidence of SGT's reclassification or attempts to monitor after reclassification makes any logical sense. Plaintiff's Second Amended Complaint asserts that SGT was, in fact, exited from ESOL services [Doc #54, ¶¶ 155. 161]. Their claim is based on a contention that SGT was exited prematurely and not monitored adequately. Plaintiffs' proposed sanction seems to contradict this claim, as it would essentially mean that, under the evidence of the case, SGT remained in ESOL services until his

    suicide. While this would presumably undermine Plaintiffs' ESOL cause of action, it otherwise serves to establish a fictional narrative that itself would go far beyond an adverse inference, which the Court has already determined was too severe.

2. Plaintiffs propose establishing factually that Defendants had documents and that they no longer exist due to no fault of Plaintiffs. Plaintiffs then ask the court to establish factually that forms relating to SGT's reclassification and monitored status were never provided to SGT's parents, even though documents were provided in discovery signed by SGT's parent informing them of his reclassification and his conference report from the end of his first year in monitored status [Doc #50-13; 80-5 p.7; 80-11 p.44]. Similarly, Plaintiffs request stipulations regarding the contents of Defendant Dugger's logbook regarding lunch detention imposed and possible contacts to SGT's parents regarding a federal aid form. But Plaintiffs seek that stipulation for the purpose of establishing that the information would help them better understand the emotional and psychological health of SGT prior to his death, even though the only prejudice from the logbook's spoliation related to how many parents called Defendant Dugger about SGT's lunch detention incident, who called Defendant Dugger, and what her notes reflected about those calls [Doc #17 p.29]. Such stipulations proposed by Plaintiffs go far beyond curing the spoliation.

    Plaintiffs also contend that the Court should preclude and strike testimony regarding of any irretrievably destroyed evidence and allow Plaintiffs to argue any inferences they may hope the jury will draw. Such a sanction is tantamount to an adverse inference at minimum, as Plaintiffs would obviously argue an adverse inference to the jury if permitted.

3. As mentioned previously, the Court found that sanctions "do not rise to the level of drawing an adverse inference" [Doc #107 at p.1]. Yet Plaintiffs third proposed sanction

is to draw an adverse inference in ruling on any motion for summary judgment. It is unclear whether Plaintiffs propose that an adverse inference only be utilized in ruling on a motion for summary judgment, with no such inference existing in the event that summary judgment is denied. Regardless, the Court has already determined that an adverse inference is inappropriate in this case, and there is no justification to reconsider that determination.

4. In another effort to obtain an adverse inference instruction, Plaintiffs propose that they should be allowed to present evidence of the spoliation to the jury and argue any inference the jury may wish to draw from that spoliation. As noted in Plaintiffs' second proposal above, this is equivalent to an adverse inference at a minimum and is inappropriate in light of the Court's Order.

5. Continuing the same trend of arguing for sanctions the Court has already ruled against, Plaintiffs seek an adverse inference with respect to Defendant Dugger and a positive inference on behalf of SGT's parents[1]. Plaintiffs offer no justification to reconsider the determination, and this option has already been foreclosed by the Court.

6. In Plaintiffs' Motion for Spoliation Sanctions, no contention was made that either the logbook or ESOL records would affect expert testimony. The Court also noted in its Order that neither party made any showing that the spoliated evidence affected expert testimony [Doc #107, pp. 26, 30]. Yet, Plaintiffs ask for the exclusion of Defendants' expert testimony. Such an exclusion goes far beyond an appropriate remedy, which has not been shown to have any connection to or effect on Defendants' expert testimony.

---

[1] It is unclear what would constitute a "positive inference" in favor of Plaintiffs nor how such a positive inference for Plaintiffs is not the functional equivalent of an adverse inference against Defendants.

7. Similarly, Plaintiffs' request for cost-shifting of expert expenses and discovery expenses bears no meaningful connection to the spoliated evidence. The Court's Order recounted that "[t]here has been extensive fact discovery and Plaintiffs have had ample opportunity to explore the loss or destruction of evidence, the likely content of any missing information, and any harm arising from the loss or destruction of that evidence" [Doc #107 p.12]. But Plaintiffs now suddenly claim that they need additional discovery ordered to depose other personnel about the logbooks and determine whether other students' records have also been lost or misplaced. It is not clear why this is now necessary, nor why it wasn't pursued in the extensive discovery that has already taken place. If Plaintiffs feel the need to pursue such fact-finding despite ample opportunity previously, Defendants should not be made to bear that burden.

8. Plaintiffs seek payment of attorney's fees and the cost of additional depositions. But the depositions sought was already taken by Plaintiffs and the location of the ESOL records and logbook were a topic of inquiry during those depositions. Plaintiffs' request seeks one "new" deponent – the District's information technology manager. Plaintiffs make no connection between the spoliated records and this potential deponent. The spoliated records at issue would have been undisputedly in paper form, and no basis is argued as to what relevance an IT manager would bring to the table regarding such paper records in a school. As noted in number seven above, Plaintiffs have already had ample opportunity to discover the information sought, and Defendants do not need to bear the burden of additional discovery by Plaintiff.

9. Plaintiffs seek money damages in the nature of a fine in an amount of at least $50,000. Such an award would be extraordinarily excessive in light of the relative harm of

5

inadvertent spoliation. Furthermore, as Plaintiffs note in their request, such sanctions have been awarded where a party "willfully blinded itself." Here, no willful blindness occurred or any willful misconduct on the part of Defendants. It is not even clear whether the ESOL records at issue were ever created, nor is there any evidence of who – if anyone – was aware of the logbook left behind by Defendant Dugger in a box or that it would possibly contain information relevant to this matter.

10. Plaintiffs' one reasonable request for sanctions is their final request – that Defendants pay reasonable costs and attorney's fees incurred in connection with the motion for spoliation. Given that the Court's Order left open the possibility of additional sanctions if prejudice were shown for other claims of spoliation, it would be appropriate for the Court to order Defendants to bear the costs of Plaintiffs obtaining the Court's Order as a sanction for the spoliation and as a deterrent to future spoliation.

Respectfully submitted this 11th day of June, 2024.

        **PEREIRA, KIRBY,**
        **KINSINGER & NGUYEN, LLP**

        */s/ Brian Smith*
        Brian Smith
        Georgia Bar No.: 001306

        **ATTORNEY FOR DEFENDANTS**

210 Washington St. N.W., Suite 203
Gainesville, Georgia 30501
Phone: (770) 534-7341
Fax: (770) 532-0399
E-mail: bsmith@pkknlaw.com

## CERTIFICATE OF SERVICE

I certify that on June 11, 2024, I electronically filed **DEFENDANTS' RESPONSE TO SUPPLEMENT BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorney(s) of record.

**PEREIRA, KIRBY,
KINSINGER & NGUYEN, LLP**

*/s/ Brian Smith*
Brian Smith
Georgia Bar No.: 001306

**ATTORNEY FOR DEFENDANTS**

210 Washington St. N.W., Suite 203
Gainesville, Georgia 30501
Phone: (770) 534-7341
Fax: (770) 532-0399
E-mail: bsmith@pkknlaw.com