UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CAROL KOHN, Mother and legal guardian of SGT, Minor and ESTATE OF SGT, | : : : |
| Plaintiffs, | : : |
| v. | : CASE NO.: 2:21-CV-108 : |
| CAMDEN COUNTY SCHOOL DISTRICT, DANIEL BURNS, Official and Individual Capacity and GAIL DUGGER, Official and Individual Capacity and KATHRYN JACKSON, Official and Individual Capacity | : : : : : : : |
| Defendants. | : |

## PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS AND INCORPORATED BRIEF

COMES NOW, Plaintiffs and respectfully file this Motion for Spoliation Sanctions against Defendants, and incorporated brief, relating to six categories of electronically stored information (ESI) evidence which Defendants manually destroyed or lost: (1) SGT's Google account data, (2) SGT's Securely data, (3) teacher emails, (4) SGT's alleged Typing.com records, (5) surveillance footage, and (6) Defendant Burns' emails and information technology (IT) ticket to recover his allegedly corrupted emails. This Motion contains both new and renewed claims for spoliation of evidence.[1]

---

[1] While this Motion relates to new areas of spoliation (as well as old areas), it relies on the previous findings of the Court, most notably that the District was on notice of likely lawsuit by November 2019, within several days of SGT's death. [Dkt. 107, p. 7]

I.  **INTRODUCTION, PROCEDURAL HISTORY, AND NEW FACTS**

Plaintiffs filed their first Motion for Spoliation Sanctions on May 1, 2023. [Dkt. 50] The Court granted in part and denied in part Plaintiffs' first Motion. [Dkt. 107, p. 1] The Order left some areas open for additional discovery and invited Plaintiffs to re-address those areas in the future. [Id.] Around the same timeframe, Defendants filed a motion for summary judgement, disclosing a new factual theory along with a new witness. [Dkt. 80-3, Dkt. 80-4; see also, Dkt. 88, *et seq.*] Defendants new factual theory claims that Defendant Burns moved SGT out of the gym class, where SGT was being bullied, and into a typing class. [Dkt. 80-4] Previously, there was no evidence that Defendants did anything in response to multiple reports by SGT's parents that SGT was being bullied at school [See, Dkt. 90, p. 33, ⁋1] Plaintiffs subsequently conducted additional discovery into this new factual theory and Defendants' spoliation.

Since their first Motion for Spoliation Sanctions, Plaintiffs' discovered that:

- The Defendants manually deleted all of SGT's Google account data (including Google documents, chats through shared documents, emails, and login metadata) [Trower Depo., p. 38, Ex. A]. If that data had not been manually deleted, it would have been saved forever (Q: Does Google automatically delete anything? A: Not to my knowledge, no.") [Id.]

- The Defendants allowed a third-party service to delete SGT's search and browsing web history a year after SGT's death. [Id., p. 29]

- The Defendants allowed the same third party service to delete any history of flagging of SGT for at-risk online behavior. [Id., p. 32]

- Defendant Burns had to manually remove his emails from the cloud, which would have otherwise saved them forever. [Id., pp. 37-38] Even after removal from the cloud, the Defendants could have recovered Defendant Burns' emails for up to a year. [Id., p. 38]

2

- The Defendants failed to preserve the ticket Defendant Burns wrote concerning his allegedly corrupted emails [Id., p. 51]

- The Defendants failed to preserve SGT's Typing.com records, which would have shown whether he was actually moved into a typing class, as alleged. [Id., pp. 49-50; McElroy Depo., p. 16, Ex. B]

Based on these new discoveries, a new Motion for Spoliation Sanctions against Defendants is ripe, and Plaintiffs respectfully request that the Court sanction Defendants. Given the foregoing, more than ample evidence exists from which the Court should apply sanctions.

## II.     RULE 37(E) ESI STANDARD

This mass destruction and loss of ESI implicates Federal Rule of Civil Procedure 37(e)(2) because Defendants have demonstrated an intent to deprive Plaintiffs of some or all of this ESI. Perhaps the best evidence of Defendants' intent to deprive is the Defendants' major misrepresentations regarding the preservation and search for ESI.[2]

- In prior briefing, the Defendants previously represented, "Assistant Superintendent McCarter met with the Principal of SGT's school and she and other individuals at the school searched individual devices for any emails relating to SGT." [Dkt. 63, p. 6] As it turns out, that assertion was patently false. During her October 2024 deposition, the Principal of SGT's school Angela McManigal testified she has no recollection of anyone telling her to ask SGT's teachers to search their inboxes for emails relating to SGT. [McManigal Depo., p. 23, 39, Ex. C] Further, she has no knowledge of anyone going to SGT's teachers and asking them to search for paper records for anything relating to SGT. [Id., p. 23]

---

[2] Notably, Plaintiff only discovered these misrepresentations because they fought for a third Rule 30(b)(6) deposition; Defendants opposed Plaintiffs' taking this deposition. [See, Dkt. 124]

3

- The Defendants previously represented that the Google account data was "automatically deleted within four to six months of SGT's death." [Dkt. 63, p. 4] In fact, the District manually deleted SGT's Google records, including emails; that Google student data survives forever unless its deleted. [Trower Depo., p. 38, Ex. A]
- The Securely data was maintained and accessible to the Defendants for one year after SGT's death; the Defendants previously testified that they were lost within four to six months [Compare, McCarter Depo., pp. 85, Dkt. 50-1 with Trower Depo., p. 29, Ex. A].
- Like the Google student account data, Defendant Burns' emails would have survived forever on the cloud. [Trower Depo., p. 36, Ex. A] Burns had to manually remove them from the cloud to his personal computer. [Id., pp. 37-38] Even then, his emails were recoverable on the cloud for up to a year from when he removed them from the cloud; the District previously testified that they were lost within four to six months. [Compare, Dkt. 50-1, McCarter Depo., pp. 85 and Trower Depo., p. 29, Ex. A] Further, the Defendants failed to preserve records regarding their attempt to recover those emails. [Trower Depo., pp. 51-52, Ex. A]
- Lastly, nearly five years into this litigation, Defendants expounded a new exculpatory factual theory with a new witness, where Defendant Burns alleged moved SGT out of a class where he was being bullied. The Defendants allowed all ESI relating to that exculpatory theory to be permanently destroyed. [Trower Depo., pp. 48-51, Ex. A]

Because Defendants' intentionally deprived Plaintiffs of ESI, the Court should sanction Defendants with an adverse inference, including jury instruction, relating to each lost or deleted category.

## III. APPLICABLE BURDENS ON THE PARTIES

A. <u>The Defendant's ESI Preservation Burden is Higher Due to Its Sophistication.</u>

The Advisory Committee Notes to the 2015 Amendment of Federal Rule of Civil Procedure 37 instruct that a "court should be sensitive to the party's sophistication with regard to litigation in evaluating preservation efforts." Here, the Defendants should be considered highly sophisticated. The District has an annual operating budget of over one hundred million dollars ($100,000,000.00). [Tucker Depo., p. 40, Dkt. 46-8] With that operating budget, the District is able to afford an entire IT department of five (5) full time professionals, including four (4) systems engineers and an IT manager. [Trower Depo., p. 10, Ex. A] Within this context, the Court should hold the Defendants to a particularly high burden to preserve records and ESI.

B. <u>Plaintiffs Were Prejudiced by the Destruction of Evidence, Regardless of Whether It Was Favorable.</u>

Courts in the Eleventh Circuit have held that a non-spoliator is prejudiced regardless of whether it can be ascertained the favorableness of the lost evidence. "This District and other courts in this Circuit have suggested that a non-spoliating party suffers 'prejudice' under Rule 37(e) if the unavailable ESI would have helped evaluate the merits of its positions, regardless of whether the ESI would be favorable its case." <u>Wilson v. HH Savannah, LLC</u>, No. CV420-217, 2022 U.S. Dist. LEXIS 144965, at *19-20 (S.D. Ga. June 1, 2022). <u>Coward v. Forestar Realty, Inc</u>., 2017 U.S. Dist. LEXIS 232979, 2017 WL 8948347, at *8 (N.D. Ga. Nov. 30, 2017) ("The Court finds that the loss of the videos is prejudicial to the . . . Defendants. Certainly, the videos at issue would be helpful in evaluating the merits of the Parties' positions."); <u>Sosa v. Carnival Corp.</u>, 2018 U.S. Dist. LEXIS 204933, 2018 WL 6335178, at *20 (Plaintiff suffered prejudice when she "cannot probe the accuracy of [Defendant's] assessment because [it] inexplicably lost the [ESI].").

Here, regardless of whether the deleted and lost ESI was favorable or unfavorable, Plaintiffs were entitled to discovery of it to evaluate how it impacts merits of their case. Plaintiffs are unable to make that evaluation because of Defendants actions and inactions. Because Plaintiffs are unable to evaluate the merits of these categories of ESI, they have been prejudiced.

  C. <u>It Is Unfair to Place the Burden on Plaintiff to Prove the Existence of Evidence the Defendants Destroyed.</u>

"[I]n spoliation cases, courts must not hold the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence…While the burden of establishing prejudice generally falls on the party seeking sanctions, the court is cognizant that [the non-spoliator] will likely never be able to prove what was contained in the destroyed evidence. In such a situation, only the party that engaged in the destruction knows how much prejudice has been caused (or potentially caused) by the destruction. <u>Ala. Aircraft Indus., Inc. v. Boeing Co.</u>, 319 F.R.D. 730, 742 (N.D. Ala. Mar. 9, 2017) (internal quotations and citation omitted).

"[A] party moving for sanctions based on spoliation is not required to prove the content of deleted documents. That burden falls to the accused spoliator." <u>Taylor v. Mitre Corp.</u>, Civil Action No. 1:11-CV-1247, 2012 U.S. Dist. LEXIS 161318, 2012 WL 5473573, at *3 (E.D. Va. Nov. 8, 2012) (citations omitted). "To require a party to show, before obtaining sanctions, that <u>unproduced</u> evidence contains damaging information would simply turn 'spoliation law' on its head.")." <u>Brown v. Chertoff</u>, 563 F. Supp. 2d 1372, 1379 (S.D. Ga. June 18, 2008) (emphasis in original). Here, it is not Plaintiffs' burden to show what was lost. That burden is on the spoliating Defendants. In all areas of speculation regarding what certain evidence contained, Defendants are not entitled to any presumption that the evidence was not relevant.

6

Indeed, "it can be fairly assumed from everyday experience in this modern world that this ESI included stored photographs, notes, recorded conversations, and information from various applications, in addition to text messages and other communications." Doe v. Willis, No. 8:21-cv-1576-VMC-CPT, 2023 U.S. Dist. LEXIS 64370, at *17 (M.D. Fla. Apr. 12, 2023) (where a party disposed of a cell phone, the court found that spoliation sanctions were appropriate for the destruction of ESI, despite not knowing exactly what data the phone contained). In this case, it can be fairly assumed that the ESI destroyed by the Defendants included SGT's emails, documents, student chats, search history, teacher emails, SGT's online "Securely" alert log, and login metadata.

### IV.     CATEGORIES OF ESI DELETED OR LOST BY DEFENDANTS

As previously noted, there are six categories of ESI that Defendants either manually deleted or lost and are therefore subject of this Motion: (1) SGT's Google account data, (2) SGT's Securely[3] data, (3) teacher emails, (4) SGT's alleged Typing.com records, (5) surveillance footage, and (6) Defendant Burns' emails and IT ticket to search for emails.

   A.   Google Student Data.

Google student data maintained by the District included student assignments, emails, Google documents, and login metadata. [Trower Depo., p. 13, Ex. A] Login metadata tracked when a student logged into his or her school account. [Id., p. 45] Google documents were used for classwork, but students also regularly use Google documents to chat with each other during school hours, a fact known to the District. [Id., p. 46] Students also used email to communicate with each other, teachers, and parents. [Id., p. 46] The Google student data is hosted by the Google cloud. [Trower Depo., p. 9-10, 13, Ex. A]

---

[3] As described in greater detail below, Securely is a third-party software service that provided student web-tracking, student web-filtering, and a student alert system to the District during 2019 and 2020.

Despite the Defendants' earlier assertions to the contrary, **Google student data was not and is not automatically deleted**. [Compare, Dkt. 63, p. 4 and Trower Depo., pp. 27-29, 38, Ex. A] It was manually and intentionally deleted at the District level. [Trower Depo., p. 38, Ex. A] Google does not automatically delete anything. [Id.] Without some action by the District, all student Google account data survives into perpetuity. [Id.] Therefore, the District manually and intentionally deleted SGT's student Google account data after being on notice of a likely lawsuit pertaining to SGT's death. The District's information technology manager could only speculate as to when SGT's account would have been manually deleted, but it could not have occurred earlier than six months from SGT's death (student accounts were not considered for deletion until six months of inactivity). [Trower Depo., pp. 27-28, Ex. A]

SGT's Google account data would have been a treasure trove into SGT's state of mind in the months leading up to his death, his interaction with his teachers and peers, and his efforts at school. Further, SGT's Google account login metadata would have proved whether he was logging into the typing class that Defendant Burns allegedly moved SGT into, in the weeks before his death. Regardless of whether this ESI would be helpful to Plaintiffs' case, it would have helpful to *evaluating* Plaintiffs' case; therefore, Plaintiffs have been prejudiced by Defendants' manual destruction of this ESI. Wilson 2022 U.S. Dist. LEXIS 144965, at *19-20.

B. Securely Student Data.

Securely is a third-party company that provided web filtering and at-risk alert services to the District during 2019 and 2020. [Trower Depo., p. 41, Ex. A] Securely tracked each student's web behavior. [Trower Depo., pp. 28-29, Ex. A] Securely data included student online search and browsing history [Trower Depo., p. 29, Ex. A] The Securely data also include alerts if a student typed a key word which would indicate a red flag, such as self-harm. [Trower Depo., p. 32, Ex. A]

Defendants had access and control of that data for its students. [Trower Depo., p. 28, 30, Ex. A] Unlike Google data, Securely data was automatically deleted, but it retained the web-tracking data for a full year, meaning that SGT's online search and browsing history was available to the Defendants until November 2020. [Id., p. 29] The District also believes that it retained the Securely alert data for a full year, meaning any alerts (or lack of alerts) generated by SGT's account would have been available to the Defendants until November 2020. [Id., p. 32]

On the day he committed suicide, SGT posted to social media account, "Hey guys life is hard right now and I can't take it anymore so I have decided I want to die." [SGT Instagram Post, Ex. D] It is possible that SGT made that post from school. [Trower Depo., pp. 47-48, Ex. A] The Securely web-tracking data would have provided an insight into whether SGT, in fact, made the post from school; it would indicate whether he visited a "proxy site" to skirt the school firewall. [Id.]

SGT's Securely data would have shown SGT's web search and browsing history. Like the Google account data, this web history would have been a treasure trove of information into SGT's state of mind in the months, days, and hours before he committed suicide. Specifically, this web history would provide insight into whether SGT posted the social media suicide message at school, and it could indicate whether he was searching any other websites which would have given clues that he was in distress. Next, the Securely alert data would have shown whether SGT's online behavior ever triggered an alert or multiple alerts, informing the District that SGT may be at-risk.

C. Teacher and Staff Emails and Records.

Contrary to the Defendants' prior representations, all teacher emails were saved in perpetuity on the Microsoft-365 cloud, unless they were deleted from the cloud by a teacher or the District no longer employed that teacher. [Id., pp. 34-38] If a teacher deleted an email from the

9

Microsoft-365 cloud, it was still recoverable for up a year. [Id., pp. 38] This is completely at odds with the prior testimony of the District's records custodian, who stated that all teacher emails were deleted every four to six months. [Dkt. 50-1, p. 85] Given this discrepancy between the McCarter (as the District's records custodian) and Trower (the District's IT manager), it is unclear whether Defendants undertook a meaningful search of teacher emails to determine if relevant emails exists. Over two hundred and twenty pages of recent email disclosures (five years into litigation) would suggest that the Defendants have not undertaken a meaningful search of its teacher and staff emails. [See, Dkt. 128]

As has already been discovered, teacher and staff emails contain relevant information. For instance, when asked to search her email inbox, Sandra Deloach found emails about SGT, including one six days before he committed suicide, commenting that he was failing a class and demonstrating "attention-seeking" behavior. [Dkt. 50-7, pp. 7-8][4] Or, in the recently disclosed emails, Defendants found over two hundred pages of meeting agenda, some of which showed when the school trained on bullying and suicide prevention, and others agendas showed how the school responded to SGT's suicide. [Ex. E, sample meeting agendas] Or, when Ana Vinuela (the Ownership Room supervisor) was asked to search her records, she found additional disciplinary records for SGT, including one from the day he committed suicide. [Ex. F, Ownership Room Records There can be no doubt that these types of records would be beneficial in evaluating Plaintiffs' claims. That none of these categories of ESI were disclosed until immediately before

---

[4] See also, Dkt. 50, p. 19 ("In the case of at least one of SGT's teachers, Sandra DeLoach, the District did not even ask her to search her work computer until February 2023. [DeLoach Depo., pp. 34-35, ll. 20-9, Dkt. 46-7] Deloach was potentially the last District employee to see SGT alive. [*Id*., 30, ll. 4-25] In other words, the District failed to ask a critical witness to search her computer for relevant evidence until ten months after being served with discovery requests, fifteen months after suit was filed, and over three years after being on notice that Mrs. Kohn would file a lawsuit.")

depositions suggests that Defendants is intending to prevent Plaintiffs from finding other relevant information in the Districts' staffs' emails and personal records.

D. Typing.com Records.

Defendants' new factual theory (propounded with their summary judgment motion) is that Defendant Burns moved SGT out of gym class (where he was being bullied) and into Hamilton McElroy's business and computer science class. [Dkt. 80-3; Dkt. 80-4] Defendant allege this class change occurred sometime within the two to three weeks before SGT's suicide. [Id.] McElroy testified that SGT performed assignments on Typing.com during that time. [McElroy Depo., pp. 16, 25, 27, Ex. B] The Typing.com resource synched with SGT's Google account, so SGT logged into Typing.com with this school Google account username and password. [Id., p. 31] Synching to SGT's Google account to Typing.com also allowed McElroy to access SGT's Typing.com assignments and monitor SGT's typing progress. [Id.] The Defendants allowed the Typing.com ESI relating to this factual theory to be permanently destroyed. [Trower Depo., pp. 48-51, Ex. A] This ESI would have proved whether SGT was actually moved in McElory's class, but because Defendants allowed it to be deleted, Plaintiffs cannot probe this late-stage exculpatory theory.

E. Burns' Lost Emails and the IT Ticket to Recover Them

Plaintiffs respectfully request that the Court reconsider its earlier finding regarding Defendant Burns' emails for two reasons. First, contrary to Defendants' earlier assertions, Defendant Burns' emails were not automatically deleted from the cloud. [Compare, Trower Depo., p. 10, 23, 36, Ex. A and Dkt. 50-1, p. 89] Microsoft-365 is the cloud service for teacher and staff emails, and those emails exist into perpetuity unless manually deleted from the cloud. [Trower Depo., p. 10, 23, 36] For Defendant Burns to have lost his emails, he must have removed them from the cloud. [Id.] As the Court will recall, Burns' lost emails covered the time period when SGT

was being bullied and when SGT committed suicide. [Dkt. 46-2, p. 87] Further, the log entry regarding Plaintiffs' first report of bullying to Burns references an email ("[SGT] said he's getting bullied. [E]mail [Mom] w/ results"). [Dkt. 50-4] Given that Burns' removed these emails from the Microsoft-365 cloud, which would have preserved them forever, it is worth reevaluating whether Defendant Burns took reasonable steps to preserve these records. [Dkt. 107, p. 16]

Second, the Defendants lost all evidence demonstrating their attempts to recover Defendant Burns' emails. The District employs a "ticket" system for fixing IT problems. [Trower Depo., p. 19, Ex. A] In 2019 and 2020, that ticket system was provided through a third-party service called SchoolDude. [Trower Depo., p. 51, Ex. A[5]] If a District employee has a problem, "they will enter a ticket…using their e-mail address, and it gets routed to the media specialist and then gets routed to the [IT] technician." [Id., p. 19] That ticket data was stored on the SchoolDude cloud, and there was no automatic deletion of that data. [Id., p. 52] However, the District changed its ticketing service in May 2021, and it no longer has access to the historic ticketing data. [Id., pp. 51-52]

This ticketing system and associated data is relevant because Defendant Burns lost all of his emails from the school during which SGT committed suicide, and Defendant Burns requested IT support to recover those emails. [Dkt. 46-2, p. 87; Dkt. 50-1, p. 88] Presumably, he would have done so through the ticketing system. Despite this, the District IT department was never asked to search for or preserve any tickets relating to this lawsuit. [Trower Depo., pp. 19-20, Ex. A] If the District had preserved Defendant Burns' IT ticket to recover the emails, Plaintiff could have determined when exactly Defendants searched for the emails and when exactly Defendant Burns removed them from the cloud. These dates are important because teacher emails were recoverable

---

[5] Trower initially believed the ticket system was provided through a third party called Spiceworks during 2019 and 2020. Later in his deposition, Trower corrected that the District used a differed third party, SchoolDude, for the tickets. [Trower Depo., pp. 19, 51, Ex. A]

from the cloud for a full year after they were deleted from the cloud. [Trower Depo., p. 38, Ex. A] Therefore, if Defendant Burns removed these emails from the Microsoft-365 cloud in May 2020 (the end of the school year when SGT committed suicide), those emails were recoverable on the cloud until at least May of 2021.

In sum, Burns had emails likely relevant to SGT's bullying and suicide, he removed them from the Microsoft-365 cloud which would have saved them into perpetuity, he allegedly saved them locally on his computer, his computer then allegedly was corrupted and the locally saved emails were lost, and then Defendants lost all evidence regarding its efforts to recover those emails. This behavior does not demonstrate reasonable steps to preserve.

F. Surveillance Footage.

Plaintiffs respectfully request that the Court also reconsider its prior finding regarding surveillance footage. [Dkt. 107, p. 21] Defendants' failure to act resulted in this loss of evidence, and thus, it is Defendants' failures that resulted in Plaintiffs' inability to know whether the surveillance footage existed and if it was relevant. Defendant Dugger failed to investigate two actionable reports of bullying; she literally did nothing because she allegedly did not believe it was her responsibility. [Dkt. 90, pp. 33-34, ₱2] That means she did not review surveillance footage, despite that the bullying reports indicated that SGT was being bullied in gym class and in the hallways around October 29, 2019. [Id.] She had very easy access to the surveillance footage – she could have watched it from the computer in her office. [McManigal Depo., p. 55, Ex. C] That surveillance system was set up for the whole school, including the gym and hallways. [Id., p. 56, 58] The District's surveillance footage system saves video for at least one month. [Id. pp. 59-60] The Court previously found that because Plaintiffs could not provide precise dates, individuals involved, and location, that the claim for spoliation is speculative. [Dkt. 107, p. 21] However, that

finding seems to punish Plaintiffs for Defendants' failures because it overlook that Plaintiffs cannot know that information because Defendants failed to investigate. Many Courts in the 11th Circuit have found that deleting surveillance footage causes prejudice, despite not knowing what the video showed. Coward., 2017 WL 8948347, at *8. As such, Plaintiffs respectfully request that the Court reconsider its prior ruling regarding this area of evidence.

## V.  CONCLUSION

The sunshine of discovery continues to highlight Defendants' blatant disregard for their legal duties. Defendants destroyed and lost a great amount of relevant and discoverable ESI, which was in their possession or control, and which is unquestionably relevant to this case. Then, the Defendants misrepresented how that ESI was lost or deleted. As briefed above, this constitutes spoliation and deserves sanctions. This institution and these individuals are supposed to be stewards of our children. The failure upon failure to preserve documents and participate in good faith discovery belies any hint of mistake; this behavior must be intentional.

Finally, it is worth noting how this destruction of evidence underlines the Defendants' cruelty toward SGT's family, who have always been desperate to more fully understand why their son and brother committed suicide. An iota of decency and compassion would demand that Defendants save any and all records which would potentially add color to that ultimate question. However, Defendants have lost nearly all of it – not only that, but they also manually deleted much of it. In Plaintiffs' mind, this begs the question, what are they hiding? In consideration of the foregoing facts and law, Plaintiffs respectfully request that the Court apply an adverse inference over the six categories of deleted and lost evidence.

This 25th day of October, 2024.

    /s/ *M. Waite Thomas*
JOSEPH R. ODACHOWSKI
Georgia State Bar No: 549470
M. WAITE THOMAS
Georgia State Bar No: 617667
*Attorneys for Plaintiffs*

TAYLOR, ODACHOWSKI, SCHMIDT
   & CROSSLAND, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia 31522
Telephone:   (912) 634-0955
Facsimile:   (912) 638-9739
Email:   jodachowski@tosclaw.com
           wthomas@tosclaw.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties in the foregoing matter with a copy of the ***Plaintiffs' Motion for Spoliation Sanctions and Incorporated Brief*** through the Clerk of Court, using the CM/ECF system, which will automatically send email notification of such filing to the attorney(s) of record.

This  25th  day of  October , 2024.

                                                       /s/ *M. Waite Thomas*
                                               JOSEPH R. ODACHOWSKI
                                               Georgia State Bar No: 549470
                                               M. WAITE THOMAS
                                               Georgia State Bar No: 617667
                                               *Attorneys for Plaintiffs*

TAYLOR, ODACHOWSKI, SCHMIDT
   & CROSSLAND, LLC
300 Oak Street, Suite 100
St. Simons Island, Georgia 31522
Telephone:    (912) 634-0955
Facsimile:     (912) 638-9739
Email:          jodachowski@tosclaw.com
                  wthomas@tosclaw.com