UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CAROL KOHN, Mother and legal guardian of SGT, Minor and ESTATE OF SGT, | : : : |
| Plaintiffs, | : : |
| v. | : CASE NO.: 2:21-CV-108 : |
| CAMDEN COUNTY SCHOOL DISTRICT, DANIEL BURNS, Official and Individual Capacity and GAIL DUGGER, Official and Individual Capacity and KATHRYN JACKSON, Official and Individual Capacity | : : : : : : : |
| Defendants. | : : |

**PLAINTIFFS' MOTION FOR SANCTIONS
DUE TO DEFENDANTS' DISCOVERY ABUSES**

Defendants have utterly failed to make a good faith effort to participate in the discovery process of this case. As briefed below, Defendants conduct rises to the level of legitimate abuse, and under Rule 37, Plaintiffs request that the Court apply sanctions.

**I.    INTRODUCTION**

As of last month, Plaintiffs learned that Defendants have not undertaken a search of emails and communications for many (if not most) of SGT's teachers. Defendants' process for searching records apparently was to wait until Plaintiffs noticed the deposition of an individual, then ask that individual if he or she had any records relating to SGT. This process resulted in the large production

of documents on the eve of the most recent depositions, including some documents that related to discipline SGT received on the date of his death.[1]

Next, with the most recent depositions, Plaintiff learned that the Defendant Camden County School District misrepresented its electronic document retention policies. On March 3, 2023, the District corporate representative testified that nearly all electronic records are deleted every four to six months. [Dkt. 50-1, pp. 83-84] There was an implication that this was an automatic and indiscriminate deletion process, and Defendants made no effort to correct that implication, despite extensive spoliation briefing on the subject. [Dkt. 63, p. 4] The Court thereafter relied on the implication that the District's deletion process was automatic. [Dkt. 107, p. 13] Plaintiffs sought follow up testimony on the document retention policy and learned that Defendants misrepresented their ESI retention policy.[2] The District, in fact, does not automatically delete any student records. [Dkt. 131-1, p. 38] The District manually deletes them, meaning that the District manually deleted all of SGT's electronic records – "it was a manual process. It's not an automatic process." [Id.]

This is all deeply concerning to Plaintiffs. Plaintiffs have no confidence (1) that all relevant records in Defendants' possession or control have been produced or even searched for, and (2) that the District provided truthful testimony regarding its discovery efforts. Defendants' approach to their legal duties suggests bad faith at the worst and a cavalier "above-the-law" attitude at the best. In either case, Plaintiffs have been severely prejudiced, and sanctions are warranted. Appropriate relief options for the Court to consider are as follows:

---

[1] The Court recently noted its concern that Defendants were just recently searching for emails, nearly five years into this litigation. [Dkt. 128]

[2] Plaintiffs note that Defendants opposed providing this testimony. Thankfully, the Court allowed the deposition to move forward over Defendants' objection, otherwise the document retention misrepresentation would have never been discovered. [Dkt. 124]

(A) Strike Defendants' Affirmative Defenses under Federal Rule of Civil Procedure 37(b)(2)(A)(ii);

(B) Find that Plaintiffs are entitled to a presumption and jury instruction that Defendants destroyed relevant evidence and misled Plaintiffs in bad faith, allowing Plaintiffs to including Defendants' discovery conduct to a jury;

(C) Order that a data forensics expert of Plaintiff's selection and Defendants' expense inspect all of Defendants' data to determine whether any relevant documents still exist and when other relevant documents were deleted; and

(D) Order that Defendants pay all Plaintiffs' costs and attorneys' fees associated with the discovery to determine this malfeasance.

Defendants' approach to discovery has been greatly unfair to Plaintiffs, and it erodes trust in the discovery system. There is not an obvious solution to cure this unfairness and mistrust, but there must be a harsh message to Defendants that this kind of conduct cannot be tolerated.

## II.  RULE 37 SANCTIONS

The Court has broad discretion to fashion appropriate sanctions. *See, e.g.,* Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1544 (11th Cir. 1993) (affirming the trial court's discretionary grant of default judgment and monetary sanctions for willful violation of discovery orders).  However, "Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." Gratton v. Great Am. Commc'ns, 178 F.3d 1373, 1374 (11th Cir. 1999). Rule 37 sanctions "are intended to: (i) compensate the court and parties for the added expenses caused by discovery abuses; (ii) compel discovery; (iii) deter others from engaging in similar conduct; and (iv) penalize the offending party or attorney." Thornton v. Hosp. Mgmt. Assocs., Inc., 787 F. App'x 634, 638 (11th Cir. 2019) (citing Wouters v. Martin County, *Fla.*, 9 F.3d 924, 933 (11th Cir. 1993)). A primary purpose of Rule 37 sanctions is to deter further abuse of discovery. Adolph Coors Co. v. Movement Against Racism & the Klan, 777 F.2d 1538 (11th Cir. 1985).

Sanctions may include: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination. Fed. R. Civ. P. 37(b)(2)(A)

### III. DEFENDANTS FAILED TO SEARCH PERSONAL RECORDS AND EMAILS OF INDIVIDUAL DISTRICT EMPLOYEES.

Angela McManigal's recent testimony coupled with James McCarter's 2023 testimony make it clear that the District has not undertaken a good faith search of its records, and therefore, Plaintiffs have no confidence that all relevant evidence has been disclosed.

On March 3, 2023, Plaintiffs deposed James McCarter as a Rule 30(b)(6) records custodian for the Camden County School District. [Records Custodian Depo. Notice, p. 1, Ex. A] According to McCarter, all internal District communications, school meeting notes, and teacher records regarding SGT would have been held at the individual school level. [Dkt. 50-1, pp. 36-37] Because these documents were kept at the school level, McCarter allegedly delegated the responsibility of finding and providing those records to the St. Mary's Middle School Principal, Angela McManigal. [Id.] Specifically, McCarter testified that he requested McManigal to pull or retrieve all internal communications relating to SGT. [Id.] In briefing, Defendants further elaborated, "Assistant Superintendent McCarter met with the Principal of SGT's school and she and other individuals at the school searched individual devices for any emails relating to SGT." [Dkt. 63, p. 6]

4

Despite Defendants' assurances that all records had been searched for and disclosed, Plaintiffs were skeptical of Defendants' document disclosure process. Throughout the litigation, there has been a pattern of Defendants disclosing obviously relevant and responsive documents right before depositions. Plaintiffs addressed this problem in prior briefing. [Dkt. 50, p. 6, 19] That pattern continued with the most recent depositions, which resulted in a hearing to reschedule those depositions. [Dkt. 128]

Angela McManigal's deposition testimony affirmed Plaintiffs' skepticism about Defendants' process for searching for documents and highlighted McCarter's misrepresentations. When asked if anyone asked her "to go to SGT's teachers and have them search their inboxes for emails related to SGT," McManigal responded, "Not that I recall." [Dkt. 131-3, p. 23] Pressed further, McManigal stated that she also did not ask SGT's teachers to review their paper records for anything pertaining to SGT. [Id.] And, McManigal does not believe anyone else would have done that. [Id.] Further, the St. Marys Middle School administrative person who is "generally known" to "keep everything" was never asked to search her computer or records for anything relevant to SGT. [Id., p. 38]

With McManigal's testimony, Defendants' late disclosures suddenly made sense – Defendants, in fact, had not asked SGT's teachers to search their records and had not undertaken a thorough investigation for relevant documents. This is obviously troubling. But it is also astonishing considering the prior spoliation briefing; Defendants went to the trouble of responding to Plaintiffs' first spoliation briefing without first checking if the records existed. [See, Dkt. 64] Defendants' motivations for this type of deception are suspect. Regardless of Defendants' motivations, this conduct should leave the Court wondering if Defendants are hiding something. The discovery system requires that parties undertake a good faith search of their records, a feature

designed to prevent this type of fear. It's clear that the Defendants failed to meet their good faith discovery obligations to search their records, and sanctions are warranted.

## IV. DEFENDANTS MISREPRESENTED THE DISTRICT'S ELECTRONIC DOCUMENT RETENTION POLICY.

In prior testimony and briefing, Defendants misrepresented the District's data retention policy. First, Defendants previously represented that the Google account data was "automatically deleted within four to six months of SGT's death." [Dkt. 63, p. 4][3] False. In fact, the District manually deleted SGT's Google records, including emails; that Google student data survives forever unless its deleted. [Dkt. 131-1, p. 38] That Google account data included SGT's classwork, his emails, saved documents, potentially chats with other students, and metadata. [Dkt. 131-1, pp. 9-10, 13, 45-46] Second, Defendants represented that all teacher emails were automatically deleted every four to six months, unless the emails were separately saved by the teacher. [Dkt. 50-1, p. 86] False again. District employee emails are retained on the Microsoft-365 cloud indefinitely. [Dkt. 131-1, pp. 34-38] Even if a District employee removed an email from the Microsoft-365 cloud, that email was still recoverable for up to year. [Id., p. 38]

Plaintiffs never would have learned about these misrepresentations unless they fought for it. In other words, these misrepresentation discoveries were not something Defendants freely offered up after learning of a mistake; instead, Defendants fought to conceal them to the bitter end. To recall, Plaintiffs alerted the Court of their intention to seek additional Rule 30(b)(6) testimony from the District in mid-August of this year, and Defendants lodged their first objection to that testimony. [Dkt. 118] The Court directed the Parties to attempt to work out the differences informally. [Id.] Defendants maintained their general objections after receiving Plaintiffs' proposed scope of questioning, and Plaintiffs had to seek Court involvement again [Dkt. 124] The

---

[3] This misrepresentation was made directly to the Court, through briefing.

Court allowed Plaintiffs to move forward with the deposition on each proposed topic of questioning.

Defendants' behavior surrounding these misrepresentations raises serious questions about their motivations, it should cause the Court to wonder what else has been concealed, and it warrants sanctions.

V. **DEFENDANTS' DISCOVERY ABUSES HAVE PREJUDICED PLAINTIFFS**

While Plaintiffs are thankful to discover Defendants' discovery misconduct, Plaintiffs are now faced with the unenviable position of learning this information after the close of discovery and after nearly five years of litigation. It should go without saying that Defendants' misconduct has severely prejudiced Plaintiff in the prosecution of their claims.

The prejudice lies largely in the unknown. Since Defendants have not thoroughly searched their records, what else is out there? Since Defendants have demonstrated a willingness to provide false testimony regarding ESI retention, what else have they misrepresented?

The prejudice also lies in the late disclosures. Even assuming that all relevant records have now been disclosed, Defendants' discovery misconduct resulted in the late production of relevant records, which has prejudiced Plaintiff. For instance, Defendants disclosed SGT's Ownership Room Records in September of this year. Because of this late disclosure, Plaintiffs have lost the ability to cross examine Defendant Jackson regarding these records. Defendant Jackson wrote all of them. The last one she wrote was on the day SGT committed suicide. Defendants' discipline of SGT, particularly on the day of his death, is highly relevant to Plaintiffs' claims. Next, Plaintiffs have lost the ability to cross examine Administrative Meeting Notes – can't cross examine Burns on these records

Finally, the prejudice also lies in the wasted time. Notably, this prejudice is also borne by the Court. Plaintiffs wasted an untold number[4] of hours preparing for and briefing the spoliation issues, only to learn much later that some of these documents subject of the briefing do, in fact, exist, or that a basic premise of ESI retention was patently misrepresented.

In essence, Defendants' conduct is deeply unfair and disrespectful to Plaintiffs and the Court. Defendants conduct would warrant sanctions even without prejudice to Plaintiffs. That Plaintiffs have been so prejudiced should warrant more severe sanctions.

## VI.  CONCLUSION

If this is how Defendants approach their legal duties under the eyes of a federal court, imagine how they approach their legal duties when no one is watching. Frankly, it's scary. And it speaks volumes to how Defendants viewed their duty to SGT and his family. In accordance with Rule 37 and in consideration of the foregoing briefing, Plaintiffs respectfully requests that the Court apply sanctions against Defendants as requested herein.

This 8th day of November, 2024.

          /s/ *M. Waite Thomas*
Joseph R. Odachowski
Georgia State Bar No: 549470
M. Waite Thomas
Georgia State Bar No: 617667
*Attorneys for Plaintiffs*

Taylor, Odachowski, Schmidt
    & Crossland, LLC
300 Oak Street, Suite 200
St. Simons Island, Georgia 31522
Telephone:     (912) 634-0955
Facsimile:     (912) 638-9739
Email: jodachowski@tosclaw.com
      wthomas@tosclaw.com

---

[4] To the extent the Court seeks to impose monetary sanctions, Plaintiffs will calculate their costs and fees associated with Defendants' discovery misconduct.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties in the foregoing matter with a copy of the ***Plaintiffs' Motion for Sanctions*** through the Clerk of Court, using the CM/ECF system, which will automatically send email notification of such filing to the attorney(s) of record.

This  8th  day of   November  , 2024.

        /s/ *M. Waite Thomas*
JOSEPH R. ODACHOWSKI
Georgia State Bar No: 549470
M. WAITE THOMAS
Georgia State Bar No: 617667
*Attorneys for Plaintiffs*

TAYLOR, ODACHOWSKI, SCHMIDT
   & CROSSLAND, LLC
300 Oak Street, Suite 100
St. Simons Island, Georgia 31522
Telephone:   (912) 634-0955
Facsimile:   (912) 638-9739
Email:   jodachowski@tosclaw.com
        wthomas@tosclaw.com